REALTY ADVERTISING AND SUPPLY COMPANY, Appellant, *v.* RICHARD J. HICKSON, Respondent.

First Department, July 11, 1918.

License — agreement for use of signboard for advertising construed — when word " covenants " does not embrace agreement to pay rent — waiver of performance — right to terminate contract.

An agreement in writing by which an advertising company rents a signboard, although specified to be a lease, constitutes a license.

Where such an agreement provides that " in case there shall be a default in the payment of any installment of rent * * * the landlord is

authorized to remove the sign of the tenant from such space and to rent said space, or any part thereof, on behalf of the tenant * * *," and further provides that " in case of the failure of the tenant to perform any of the terms of this lease other than the payment of rent, or of the violation by the tenant of any of the covenants of the lease, it shall be lawful for the landlord to terminate this lease," the landlord has no right to terminate the agreement under the last quoted provision for the non-payment of rent, because the word " covenants " as therein used does not embrace the tenant's agreement to pay rent.

As the landlord agreed to paint on the sign an advertisement from copy to be furnished by the tenant within three days after the agreement was signed and it was mutually agreed that if the sign was completed as therein provided before a certain date then the obligation to pay rent should thereupon accrue, the landlord had the right to terminate the contract before said date for the tenant's breach of the covenant to furnish copy.

But the landlord having waived performance by the tenant with respect to the delivery of the copy within the time specified cannot at will and without affording the tenant an opportunity of performing by calling upon him to deliver the copy within a reasonable time, claim a default and the right to terminate the contract on that ground.

SMITH, J., dissented, with opinion.

APPEAL by the plaintiff, Realty Advertising and Supply Company, from a determination of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of January, 1918, affirming a judgment of the Municipal Court of the City of New York, Borough of Manahattan, Ninth District, dismissing the complaint.

*Walter H. Bond* of counsel [*Bond & Babson,* attorneys], for the appellant.

*Mark Eisner* of counsel [*Hyman Dominitz* with him on the brief; *San & Eisner,* attorneys], for the respondent.

LAUGHLIN, J.:

This action as originally brought was to recover two installments of money alleged to be due and owing from the defendant to the plaintiff under an agreement in writing, specified to be a lease, which it was not (See *United Merchants Realty & Imp. Co.* v. *N. Y. Hippodrome,* 133 App. Div. 582), made on the 23d day of June, 1915, by which it was provided that plain-

tiff rented to defendant a definitely described advertising sign-board on the building known as No. 500 Fifth avenue in the borough of Manhattan, New York, to be illuminated from dusk until midnight for one year and four months from August first thereafter, for which defendant was to pay a rental of $4,000 for the entire period in equal monthly installments in advance. The plaintiff agreed to paint on the sign an advertisement from copy to be furnished by defendant giving wording and color within three days after the agreement was signed; and it was mutually agreed that if the sign was completed as therein provided before August first, then the obligation to pay rent at the rate specified should thereupon accrue. The defendant agreed not to make any change in the advertisement without plaintiff's consent in writing. The agreement contained provisions indicating that a general form of contract was used; and it provided for cancellation by the plaintiff at will on five days' notice, but that in the event of such election defendant's obligation to pay rent should terminate and that plaintiff should refund *pro rata* any rent paid for a period beyond such cancellation. It also contained provisions prescribing the rights of the parties in the event that the sign should be damaged or plaintiff should be unable to maintain the illumination. Then come the other provisions of the lease material to the decision of the appeal as follows:

" It is understood and agreed, that should default be made by the tenant in any installment of rent, then and in such event, and at the option of the landlord, all the balance of rent for the remaining period of the lease shall immediately become due and payable; and as security for the payment of the rent herein reserved, it is agreed that in case there shall be a default in the payment of any installment of rent, *and the balance of the rent for the remaining period of the lease shall become due and payable as hereinbefore provided, the landlord is authorized to remove the sign of the tenant from such space* and to rent said space, or any part thereof, on behalf of the tenant, for the whole or any part of the term, to such person or persons and for such term and upon such conditions as to the landlord may seem best, and to collect the rents thereof and to apply the same to the payment of any moneys which may be due to the landlord from the tenant, and to pay the

overplus, if any, to the tenant. It being understood that this authorization of the landlord is irrevocable by the tenant during the period of the lease.

"In case of the failure of the tenant to perform any of the terms of *this lease other than the payment of rent, or of the violation by the tenant of any of the covenants of the lease, it shall be lawful for the landlord to terminate this lease* and re-enter upon said premises by force or otherwise and re-take possession of the same and remove therefrom the advertisement of the tenant and re-let the same or any part thereof for the whole or any part of the term as it may deem best. And in that event the tenant agrees to pay each month to the landlord during the balance of the term remaining after the taking possession by the landlord, the difference, if any, between the amount to be paid as rent as herein reserved and the amount which shall be collected and received from the demised premises for such month and the landlord may sue for and enforce collection by law for such amount which may be due at the expiration of each month. And the tenant expressly agrees that any such suit shall not be a bar or prejudice in any way to the rights of the landlord to enforce the collection of the amount due at the end of any other future month by like or similar proceedings."

The plaintiff alleged that it performed, excepting in so far as it was prevented therefrom by defendant's failure to furnish the copy, and that defendant failed to pay the rent due October first and November first, aggregating $500, for which, with interest, judgment was demanded. The defendant admitted its failure to pay but alleged that plaintiff breached the agreement before the rent became due by appropriating the sign to its own use.

On the trial it was conceded that defendant did not pay the rent for August and September when due; that in the month of September plaintiff brought an action to recover the rent for those two months and on the tenth of September wrote defendant that he was in default "in the payments due" under the contract and that it would endeavor as provided in the contract "in the event of such default" to sell the space for his account and hold him for any loss sustained by plaintiff from his "not having lived up to the terms of

First Department, July, 1918.          [Vol. 184.

the contract above referred to." The contract was therein referred to by its date; but the only *terms* thereof specified were those with respect to default in paying the rent. The plaintiff next day, without other or further notice to defendant or waiting to hear from him, relet to the Shubert Bill Posting Company for forty-two dollars per week, terminable at will by either party and on the same day commenced painting the Shubert Company's advertisement on the sign and completed it on the eighteenth of the month. Meantime on the fifteenth of the month the defendant paid the rent for which the action had been brought and the statutory costs and thereupon plaintiff wrote defendant saying it was still without copy for his sign, which it assumed was owing to his not being ready for fall advertising, and that in order to reduce defendant's liability it had made an arrangement with the Shubert Company for the temporary use of the sign but that it would paint defendant's advertisement on the sign when he desired it. On September twenty-first defendant wrote plaintiff that he considered the use of the sign, for which he had paid, by any one else a breach of the contract but manifesting a willingness to consent upon being released from all obligations under the contract. To this plaintiff replied September twenty-fourth again asserting that it had the right to relet for defendant's account and expressing willingness to permit defendant to use the sign; and defendant answered on the twenty-eighth stating that any use of the sign by another would lessen the value of defendant's advertisement thereon later and that it had been well understood that his delay in furnishing copy for the advertisement was due to his inability to procure the trade mark he intended to use. On the sixth of October plaintiff by letter offered to remove the Shubert advertisement then on the sign and hold the sign blank until defendant saw fit to give it copy, *provided defendant* would make a formal request to that effect and acknowledging his liability for the balance of the term, and stating that otherwise it would not do so. The defendant ignored that request and there was no further correspondence between the parties. The Shubert Company continued to use the sign and paid therefor for the months of October and November, 1915, $423. The plaintiff conceded that defendant was entitled

to credit for that amount but insists that it is entitled to recover the balance of $77 on the theory that it *rescinded* the contract on the 11th day of September, 1915, pursuant to the express terms thereof and let the space for the account of the defendant.

I am unable to agree with Mr. Justice SMITH that the plaintiff had the right to terminate the contract under the last paragraph thereof, which is hereinbefore quoted, for the non-payment of rent. I am of opinion that the word " covenants " as therein used does not embrace defendant's agreement to pay rent. As has been seen, his agreement to pay rent is referred to in the agreement as one of the *terms* thereof and so it is referred to in the last paragraph. There are other provisions of the contract the *violation* of which was intended to be embraced in this paragraph as a violation by defendant of a *covenant*. He had agreed not to change the advertisement without plaintiff's consent and that he would furnish the copy within the time specified in the contract to the end that plaintiff might have the benefit of those provisions of the contract by which the rent was to commence before August first, in the event that it had the advertisement ready before that time. The preceding paragraph was intended to reserve the only right of the plaintiff in the event of a failure to pay rent, other than the right to sue for the installment and of course other than its right, without assigning cause, to *cancel* the contract on five days' notice. (See *McCready* v. *Lindenborn*, 172 N. Y. 400, 409; *Matter of Hevenor*, 144 id. 271.) The right thus to *cancel* the contract was not exercised and if it had been of course the liability of defendant would have terminated. Nor did plaintiff elect to declare the entire amount of the rent due as provided in the paragraph firstly quoted herein. On the contrary, it recognized the continuance of the agreement by bringing the action thereon for the rent the failure to pay which constituted the default. The sole contention of counsel for appellant is that it elected to and did *terminate* the agreement pursuant to the last paragraph thereof. After contending that it had a right so to terminate the agreement for non-payment of the rent notwithstanding the fact that it brought an action to recover the rent and accepted payment and would, therefore, be deemed to have

First Department, July, 1918.                    [Vol. 184.

waived any right it might have had to terminate the agreement on that ground (See *Clark* v. *West,* 193 N. Y. 349, 360; *Bradley* v. *McDonald,* 218 id. 391), the plaintiff now claims that it also had the right to *terminate* the agreement for defendant's breach of the covenant to furnish the copy for his advertisement. If the plaintiff had terminated the contract on this ground before August first its position would, I think, be impregnable for it is manifest that it was entitled to have the rent commence before that time provided it could prepare the sign in accordance with the agreement. It is quite evident, however, that that was the only interest it at any time claimed in having the copy for the advertisement delivered and it at no time contended that it had been prejudiced by defendant's failure to furnish the copy. Whether or not this was owing to other use of the sign prior to that time does not appear and is immaterial for prior to the time plaintiff assumed to terminate the contract the only complaint it appears to have made is, as shown by its letter to defendant on July 22, 1915, that it would insist on the rent from August first on the ground that it could have had the sign ready at that time had defendant timely furnished the copy. The learned counsel for the appellant presents an ingenious argument to the effect that on defendant's failure to furnish the copy within the time required by the contract, his client extended defendant's time for a reasonable time thereafter which did not expire until after the rent for August and September accrued and that thereafter and after the action for the rent for those months had been commenced and on September the eleventh the plaintiff elected to terminate the contract *both* for defendant's default in paying said installments *and* for his default in furnishing the copy. But it does not appear whether the action for the rent was commenced before or after plaintiff's letter of September tenth and that letter predicated plaintiff's election to relet solely on defendant's default in paying the *rent.* It is now argued without any claim to that effect having been made at any time by plaintiff, and without any evidence in support thereof, that plaintiff was interested in having the sign *used.* It made no such claim even after its election when defendant insisted that the sign should not be used until he was ready to use it and

that he was willing to pay for it.  Moreover, the plaintiff having waived performance by defendant with respect to the delivery of the copy within the time specified in the contract could not at will and without affording defendant an opportunity of performing by calling upon him to deliver the copy within a reasonable time, which was not done, claim a default and the right to terminate the contract on that ground. (*Schulder* v. *Ladew Co., Inc.,* 178 App. Div. 458, and authorities therein cited.)  The plaintiff insists that it terminated the contract on September eleventh, and that the only right thereafter remaining to either party under the contract was with respect to the liquidation of the damages as provided in the last paragraph thereof under which if the contract had been terminated pursuant to the provisions thereof this action would lie; but it was not so terminated and, therefore, the liability of the defendant under the contract came to an end when plaintiff unlawfully terminated it.    (See *Carlin* v. *Frey,* 157 App. Div. 84.)

It follows that the determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

Upon the 23d of June, 1915, the plaintiff and defendant entered into a contract, which is in the nature of a lease, which provided for the letting to the defendant by the plaintiff of a signboard on a building at the northwest corner of Forty-second street and Fifth avenue, being on the Forty-second street side, from August 1, 1915, to December 1, 1916, in consideration of a rent of $4,000 to be paid in equal monthly installments in advance.  The plaintiff agreed to paint upon said signboard an advertisement from a copy to be delivered by the defendant.  The defendant agreed that said copy would be furnished not later than three days after the signing of the lease.  The lease then stated other agreements between the parties which are not material here to the discussion, and after the statement of those agreements it provided " that should default be made by the tenant in any installment of rent, then and in such event, and at the

option of the landlord, all the balance of rent for the remaining period of the lease shall immediately become due," and as security for the payment of the rent, that in case there should be a default in the payment of any installment of rent, and the balance of rent for the remaining period of the lease should become due and payable as thereinbefore provided, the landlord was authorized to rent said space or any part thereof on behalf of the tenant, for the whole or any part of the term, and to apply the rent upon the moneys due from the defendant to the plaintiff under the lease. It was thereafter provided that in case of the failure of the tenant to perform any of the terms of this lease, other than the payment of rent, or of the violation by the tenant of any of the covenants of the lease, it should be lawful for the landlord to retake the premises and relet the same for the whole or any part of the term. In that event the tenant agreed to pay each month to the landlord during the balance of the term remaining after the taking possession by the landlord, the difference, if any, between the amount to be paid as rent therein reserved and the amount which should be collected and received from such reletting. The tenant neglected to furnish the copy which he had agreed to furnish but some time before the tenth of September the plaintiff brought an action to recover for the August and September rent. Upon the tenth of September plaintiff wrote defendant a letter calling attention to the default in the payment due upon the contract and to the provision of the lease that in case of such default the plaintiff might rent the premises for the defendant's account and advised the defendant that it would endeavor to sell the same for his account and would hold the defendant for any loss which the plaintiff suffered therefrom. Thereafter and upon the eleventh day of September the plaintiff made a contract with the Shubert Bill Posting Company to put a sign for them upon this board in the space which had been rented to the defendant. That contract provided that the space should be rented to the Shubert Bill Posting Company temporarily, with the right to the plaintiff to take the same from the Shuberts and paint the defendant's sign in its place at any time, and that the contract might be terminated at the will of the plaintiff at any time. In pursuance of that

contract the Shubert's sign was painted and put upon the signboard in the space which had been rented to the defendant. Upon the fifteenth of September the defendant paid to the plaintiff the rent due the first of August and the first of September.  Upon that date the plaintiff wrote to the defendant acknowledging the receipt of the check, called attention to the letter of the tenth, which has been mentioned, and stated that in order to save the defendant money, it had made an arrangement with the Shubert Bill Posting Company to temporarily paint their advertisement in the space, and with a reservation in its contract with the Shubert Bill Posting Company, giving it the right to terminate the contract at any time it desired, and offering to place the defendant's advertisement on the signboard at any time that a copy was furnished.  Upon September twenty-first thereafter the defendant wrote to the plaintiff as follows: " We hereby give you notice that we consider the using of the sign paid for by us, by any one else, is a breach of contract.  We are perfectly willing to have you re-let the sign, but we must first be released from all obligations."

Upon September twenty-fourth the plaintiff wrote to the defendant, calling his attention to its letters of September tenth and September fifteenth, and still offering at any time to paint the defendant's sign upon the signboard whenever a copy was furnished.  The letter continued: " You will understand, of course, that the renting of this space produces a revenue for you that you would not receive otherwise, and certainly the sub-letting is for your benefit, as the blank space can do you no good.  We beg further to state that our agreement is perfectly clear on this score that, in the event of default in any of the covenants on your part, we have the right to let the same for your account, and we are further advised by our attorneys that, notwithstanding any agreement that we may have with you, it still remains our duty to cut down your damage, and we have pursued this policy.  We will, however, look to you for any loss that is made in connection with this, and await your further advice in the event of your desiring to have the sign painted with your copy."

Upon September twenty-eighth the defendant answered the plaintiff, acknowledging the receipt of the letter of the twenty-fourth, and calling attention to the fact that the delay in furnishing copy was due to the defendant's inability to procure a trade mark which he proposed to use. In that letter it was stated that he had no desire to lessen his damage and believed the use of the sign would be a detriment of its value to him, and further stated: "We are quite prepared to pay the full amount of our account and would tell you again that any occupancy of the sign we will consider a breach of contract. We have not requested you to lessen our damage."

Upon October sixth the plaintiff responded, acknowledging the receipt of the letter of the twenty-eighth, and further stated: "In selling this space we have kept entirely within our rights under our agreement with you, but if you do not desire to lessen your loss we certainly have no wish other than to save you any loss we can. However, if you will sign the enclosed request we will proceed thereunder. The reason we are not prepared to do so in accordance with your letter of September 28, 1915, is your statement that you will consider the occupancy of the sign a breach of the contract, and unless you are willing to acknowledge your liability so far as the balance of the term of the sign is concerned, we do not care to remove the present advertisement, for, as stated, we feel we have kept entirely within our rights."

The inclosed request referred to was an unsigned letter to the plaintiff from the defendant requesting the removal of the sign of the Shubert Company and agreeing to pay the amount due for the balance of the term of the lease in accordance with the provisions thereof, less any sum that had been collected from the Shubert Company. This ended the correspondence. Thereafter and on the 22d of November, 1915, this action was commenced to recover the balance of the rents due on the first of October and the first of November, over and above the amount received from the reletting of the sign to the Shubert Bill Posting Company. In the Municipal Court the complaint was dismissed upon the ground that if the plaintiff sought to lease the premises for the account of the defendant, it must first declare the

entire rent due. The opinion concludes: "Not having exercised that option the present action must fall." This judgment has been affirmed by the Appellate Term.

In my judgment the courts below have misconstrued this lease. It is first provided in the lease that if default be made in the payment of rent, plaintiff had the option to declare the whole amount due. If default were made and the option were so exercised, the plaintiff might relet the premises and charge the defendant with deficiency. Thereafter provision was made that the premises might be relet and the defendant charged with the deficiency for any other breach except the non-payment of rent. If the lease had stopped at this point, the reasoning of the Municipal Court would have stood upon a firm basis and the plaintiff probably could not have relet for a non-payment of rent and recover for a deficiency, except upon exercising this option to declare the full amount due. But the lease did not stop there. After providing for a reletting and a recovery of the deficiency in case of non-payment of rent and the exercise of the option to declare the full amount due, and also for the same right in case of the failure of the tenant to perform any of the terms of the lease except the non-payment of rent, the lease assumes to provide another contingency, to wit: "Or of the violation by the tenant of any of the covenants of the lease." If the interpretation which has been put upon the contract be correct, this last provision is surplusage, for the contract had already provided for every violation of covenant, except the single violation of failure to pay rent without having exercised the option to declare the full amount due. It would seem as though this provision were put in the lease to cover this precise contingency, to wit, the failure to pay rent, without the exercise of that option, for otherwise it is entirely without significance. This interpretation of the contract is made certain by the provisions of the lease which follow and by which it is covenanted that in the event of the termination of this lease and the reletting of the property, the tenant agrees to pay *each month* to the landlord during the balance of the term remaining, the difference, if any, between the amount to be paid as rent herein reserved and the amount which should be collected from such re-rental,

First Department, July, 1918.　　　　　[Vol. 184.

and it is provided that the landlord may sue for and enforce a collection by law for such an amount as may be due at the expiration of each month. Again, the lease provides that the tenant expressly agrees that any suit shall not be a bar or prejudice in any way to the right of the landlord to collect the amount due at the end of any future month by like or similar proceedings. These latter provisions clearly contemplate a reletting without the exercise of the option to declare the full amount due. It is, therefore, not a fair or reasonable interpretation of this contract that it was intended that the landlord might relet and recover for the deficiency only in the event of failure to pay rent and of the exercise of the option to declare the full amount due. In fact, under the terms of this lease, it might be argued that no action could be commenced at any time except for the deficiency accruing as each month's rent became due. The landlord has apparently acted in good faith in endeavoring to save the defendant any loss upon the contract by reason of its failure to secure the benefit of the advertising, and when the defendant wrote to the plaintiff that he did not care to have the damage lessened and he would consider it a breach of the contract to put any other sign upon this board, the plaintiff offered at once to paint out the sign and hold it for the defendant, if the defendant would only acknowledge his liability under the lease, which he refused to do. In my judgment the plaintiff has acted clearly within the rights given to it under the contract and is entitled to recover the moneys sued for.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs, and a new trial granted, with costs in all courts to the appellant to abide event.

Determination affirmed, with costs.