VICTORY LUNCH, INC., Plaintiff, v. JULIA H. CARLL et al., Defendants.

Supreme Court, Special Term, New York County, November 16, 1949.

*Hyman Grill* for plaintiff.

*J. Spies* for defendants.

Isidor Wasservogel, Official Referee. Plaintiff seeks a declaratory judgment as to the application of chapters 534 and 535 of the Laws of 1949, and, more particularly, the recently enacted subdivision (k) of section 8 of the Commercial and Business Rent Laws, to certain premises of which it is a subtenant and as to the construction to be given to such laws.

The real estate involved is a four-story brick building known as 1544 Broadway, New York City. On May 19, 1943, the defendants Leonard A. Bampton, Jr., Julia H. Carll, each the owner of a quarter interest in the building, together with the Trenton

Banking Company, as substituted trustee under the will of Leonard A. Bampton, Sr., owner in fee of the remaining one-half interest in the building, entered into a five-year lease with the defendant Lane Photographers, Inc., which has defaulted in this action. The terms of the lease, which commenced October 1, 1943, permitted the lessee to occupy the entire building as a store, at an annual rental of approximately $21,000.

On July 1, 1943, the defendant Lane Photographers, Inc., entered into an agreement with Douglas Leigh, Inc., whereby the latter was permitted to erect and maintain an advertising sign on a portion of the face of the building at an annual rental of $2,400. Thereafter, on September 20, 1943, the defendant Lane Photographers, Inc., sublet the entire premises, with the exception of that part of the face of the building, which was used by the advertising company, to the plaintiff. Plaintiff occupies the street floor and is engaged in the business of selling at retail food, soft drinks and novelties. Otherwise the premises are used for amusement purposes, all in accordance with the terms of plaintiff's sublease and modifications thereof. With the exception of a portion of the rear of the premises above the street floor, which it occupies as an office, plaintiff does not make use of any of the three upper floors of the building.

Prior to June 27, 1949, the defendants landlords received and accepted a bona fide offer from World Outlet Stores, Inc., for a noncancellable lease of the entire premises at a minimum rental of $35,000 per annum for a period of not less than ten years. In purported compliance with the emergency rent laws, the defendants sent a copy of the proposed lease to plaintiff and to the main lessee, the defendant Lane Photographers, Inc. A summary proceeding to remove the plaintiff was instituted by the defendants landlords in the Municipal Court, predicated upon the failure of the plaintiff or the main lessee to execute a lease containing the same terms and conditions as that offered to defendants by World Outlet Stores, Inc. Upon plaintiff's motion, the summary proceeding was removed to the Supreme Court and consolidated with the instant action.

Subdivision (k) of section 8 (as added by L. 1949, ch. 534, § 1) which applies to commercial space, and subdivision (k) section 8 (as added by L. 1949, ch. 535, § 1), which applies to business space, are identical and provide as follows:

" So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any　*　*　*　space, by action or pro-

ceeding to evict or to recover possession \* \* \* unless: \* \* \*

" (k) the landlord, subject to the following conditions, receives and accepts a bona fide offer to enter into a lease with a prospective tenant for any store at a rental of seventy-five hundred dollars per annum or more, for a term of not less than ten years, noncancellable except for violation of any term or obligation of such lease, and the landlord offers to execute a lease containing the same terms and conditions with the tenant or tenants in possession, and such tenant or tenants fail, neglect or refuse to execute such a lease within thirty days after tender thereof to such tenant or tenants; \* \* \* As used in this subdivision the word ' store ' shall mean business space used and/or occupied by a tenant for the sale of personal property at retail and/or the rendition of services in the ordinary course of business."

Plaintiff contends that the proposed lease offered to it by the defendants is invalid or defective for the following reasons:

(1) The offer to execute the lease was not signed by any of the landlords but by an agent.

(2) The offer was made in the alternative to the main tenant, the defendant Lane Photographers, Inc., who was not in possession of the premises, or to the plaintiff, the tenant in actual possession.

(3) The lease is not for a store but for an entire four-story building.

(4) The lease is not for the same premises occupied by the plaintiff but includes the additional space on the face of the building leased or licensed for sign purposes.

(5) There has not been offered to the plaintiff a noncancellable lease for a term of not less than ten years in that the Trenton Banking Company, substituted trustee of the estate of Leonard A. Bampton, Sr., has never made application to any court for the approval of such lease.

(6) The lease prohibits plaintiff to continue the business in which it is presently engaged.

(7) The prospective new tenant's offer was conditionally made and is not a bona fide offer within the meaning of the statute.

Defendants maintain that the proposed lease offered to the plaintiff is in all respects valid and complies with the requirement of subdivisions (k) of sections 8 (as added by L. 1949, ch. 534, § 1, and L. 1949, ch. 535, § 1).

In the event that any one of plaintiff's contentions should be sustained by the court, a judgment must be entered in its favor. Because, however, of the comparatively recent enactment of subdivisions (k) and the lack of any authorities or case material on the subject matter thereof, rather than treat any of the issues summarily, the court will consider each of the contentions separately and in detail, regardless of its adjudication on any one point.

The offer to execute the lease was concededly forwarded to the plaintiff by the defendants' agent. Contrary to plaintiff's contention, this fact alone is insufficient to invalidate the landlords' offer. An examination of the documentary evidence produced at the trial clearly shows that the offer was made in the names of all the defendants as landlords. The transmitting agent was merely an instrument of defendants in submitting their offer to the plaintiff. The language of the offer itself indicates that the proposition came from the defendants, as specified by the words " the undersigned landlord hereby offers ". In any event, it does not appear that the defendants were acting for an undisclosed principal. Plaintiff must be deemed to have been aware of the fact that the offer originated with the defendants.

Likewise the fact that the defendants landlords made the offer to the defendant Lane Photographers, Inc., does not indicate nor make defective the offer submitted to the plaintiff. The statutes involved require that the offer be made to the tenant or tenants *in possession*. Lane Photographers, Inc., concededly was not a tenant in possession but was, at most, a statutory tenant, whose presence as a necessary party might be a condition precedent to recovery of the premises in the summary proceeding instituted by the defendants. However, insofar as subdivisions (k) of section 8 are concerned, plaintiff, as the sole tenant in possession, was the only party to whom the offer had to be made. The offer to Lane Photographers, Inc., was mere surplusage, which in no way affects the validity of the offer to plaintiff. There is no issue before the court as to what the effect of an acceptance of the offer by Lane Photographers, Inc., would have had upon the situation presented. As heretofore stated, Lane Photographers, Inc., has defaulted in this action and this issue as to it is, therefore, purely academic.

Plaintiff's contention that the store which it uses in the course of its business is merely part of the entire premises known as " 1544 Broadway " cannot be sustained. In the opinion of the

court, the entire building and premises constitutes a store and, therefore, the lease tendered to plaintiff does not foist upon the tenant any space in addition to that which it now occupies. In so holding, the court is not subscribing to nor relying upon the so-called " predominant use " definition of a building or other premises as used elsewhere in the statute. The subdivision applicable to the instant action clearly defines a store as " space used and/or occupied by a tenant ". It is conceded that the plaintiff uses only the street level floor for its business and a small portion of an upper floor as an office. Under the terms of its sublease, however, plaintiff has the right to use the entire building and, as a matter of fact, is the sole occupant of the premises. The entire building, therefore, is *occupied* by plaintiff under its sublease, even though it may not use all of the space to which it is entitled. The statute does not limit the definition of store to the " use " but also provides for space which is " occupied ". There is nothing in the definition which indicates that plaintiff must physically use or occupy the entire premises. If plaintiff sublet a portion of its premises, a different problem would be presented, for, in that event, the portion of the premises so sublet would not come within the definition contained in subdivisions (k), as it would not be used and/or be occupied by plaintiff in the course of its business. In the instant action, however, the entire premises are *occupied* solely by plaintiff under the terms of its sublease and may be used to any extent it sees fit for the sale of personal property at retail. The electrical display sign, which occupies the face of the three upper floors of the premises does not change the character of the building itself (*Brown* v. *Broadway & 72d St. Realty Co.,* 131 App. Div. 780). The advertising medium is merely a use to which the outside of the building could be applied, and the relationship between the main tenant and the advertising company is one of licensor and licensee (*United Merchants Realty & Improvement Co.* v. *New York Hippodrome,* 133 App. Div. 582, affd. 201 N. Y. 601; *Realty Adv. & Supply Co.* v. *Hickson,* 184 App. Div. 168). The license granted to Douglas Leigh, Inc., by Lane Photographers, Inc., was only authority to use the face of the building. A landlord and tenant relationship was never created. Douglas Leigh, Inc., never had any interest in the building itself beyond its permit to maintain the sign.

It is also the contention of the plaintiff that there was not tendered to it a noncancellable, ten-year lease for the reason that the trust may terminate prior to the ten-year period.

Defendants, however, claim that a " non-cancellable lease," as provided for in subdivisions (k) of the statutes, refers to leases containing the customary " 30 day " or " 60 day " cancellation clauses. This argument is untenable. The statute does not so provide even by implication. On the contrary it affirmatively limits the right of cancellation to instances of violation of any term or obligation of the lease.

Section 106 of the Real Property Law limits the power of a trustee to lease property for a term not exceeding five years without the consent of the court. Where a trustee has leased property for a period in excess of five years without the approval of the court, the term of the lease would endure only as long as the trust itself was in existence (*Hastings* v. *Black,* 24 N. Y. S. 2d 190; *City Bank Farmers Trust Co.* v. *Smith,* 264 N. Y. 396). The defendants claim, however, that the will of the deceased Leonard A. Bampton, Sr., gave the trustee full authority to make a lease for more than five years, and that, in any event, the joining of the remaindermen, trust beneficiaries, trustee, and co-owners of the property, removes the proposed lease from the limitation set forth in section 106 of the Real Property Law. It, therefore, becomes necessary to examine the will, the trust provisions, and to determine whether all of the remaindermen have been joined in the lease and, if so, the effect thereof on the situation presented in the instant action.

As stated above, Leonard A. Bampton, Sr., was the half-owner in fee simple of the premises involved and had such interest therein at the time of his death. The decedent left a son and daughter, the defendants Leonard A. Bampton, Jr., and Julia H. Carll, to whom he devised his one-half interest in trust during their lives. The son and daughter own the remaining one-half interest in the premises in fee simple, so that at the time of the death of Leonard A. Bampton, Sr., his children were the one-half owners in fee simple of the property, with a life interest in the remaining half. The defendant Charles M. Carll is the husband of the defendant Julia H. Carll. The defendants Dorothy B. Pickering and Julia C. English are the daughters of these defendants. The defendants Donald Pickering and Fred M. English are the husbands, respectively, of the two daughters. The defendant Norma Bampton is the wife of Leonard A. Bampton, Jr., and the defendant Jeanette B. Van Note is their daughter. The defendant Robert A. Van Note is the daughter's husband. All of these defendants were joined as signatories to the proposed lease involved in this action.

Paragraph 5 of Leonard A. Bampton, Sr's., will provides: "Fifth, All the rest residue and remainter [*sic*] of my Estate and property of every nature and description I bequeath to my son Leonard A. Bampton and my daughter Julia H. Carll as Trustees and the income is to be equally divided between my son Leonard A. Bampton and my daughter Julia H. Carll during their natural life and at their death the principal of my residuary estate is to be divided in two equal parts one part for my son Leonard's issue, and one part for my daughter Julia's issue child or children should such issue child or children or their issue child or children become extinct, then that portion they would have received under this my last Will and testiment [*sic*] is to be inherited by my nearest lineal blood relation."

From an examination of the foregoing provision of the will, it is apparent that the remainder interest is to a class, namely, the issue of the life tenants. Likewise the gift is limited to the surviving issue, or if they become extinct, to the nearest lineal blood relation. The division of the estate does not take place in any event until the death of the life tenants. It is not necessary for the court to determine whether these elements create a contingent remainder or a contingently vested interest subject to being divested by the opening of a class to let in after-born children. Under any circumstances, it is clear that the provisions of the will create, at the very least, a contingently vested remainder (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93, 102; *Salter* v. *Drowne*, 205 N. Y. 204, 213; *Wells* v. *Rowland*, 155 App. Div. 354, 357; *Rasquin* v. *Hamersley*, 152 App. Div. 522, 528, affd. 208 N. Y. 630; *Matter of Vander Roest*, 220 N. Y. 664). It is evident, therefore, that under the trust provision of the will, at the termination of the life estate there may be remaindermen other than the present defendants who would have an interest in the property. There may be children yet unborn of the defendants Leonard A. Bampton, Jr., or Julia H. Carll who would take as remaindermen. If either of the defendants Mrs. Van Note or Mrs. English be dead, their infant children would have a remainder interest, whether vested or contingent, together with such other children that may be born to them prior to the termination of the life estate. Likewise the grandchildren of the testator could die before the termination of the life estate and then his lineal descendants would take as remaindermen. In any such case the consent of the defendants in the instant action cannot serve to preclude these infants from asserting their right to declare the lease terminated upon

the termination of the life estate. The will itself does not permit the trustees to execute a lease in excess of the five-year period set forth in the statute. Consequently section 106 of the Real Property Law is here applicable. The defendants cannot bind the infant remaindermen nor alienate their rights or the rights of others who may subsequently be born. Should the trust endure for less than ten years, the lease could be cancelled. I hold, therefore, that the lease tendered to plaintiff is not for a term of " not less than ten years, non-cancellable," within the meaning of subdivisions (k). Plaintiff, therefore, was not bound to accept the proposal submitted to them by the defendants.

The authorities cited by defendants in support of their claim that the trustee has the power to execute a lease in excess of five years without approval of the court because of the circumstances involved herein are clearly distinguishable from the instant action and do not remove the applicability of the limitation set forth in section 106 of the Real Property Law.

*Matter of Cohn* (40 N. Y. S. 2d 892, 895), cited by defendants, merely holds that the executors and trustees of a will have a right to execute a lease. The case does not go so far as to permit a trustee to abrogate the provisions of the Real Property Law as to the five-year limitation on the leasing power. In *Raynolds v. Browning, King & Co.* (123 Misc. 367, affd. 217 App. Div. 443) the provisions of the will itself authorized the trustee to lease for a term beyond the duration of the life estate. It is sufficient to note that such authorization is not provided for in the will of Leonard A. Bampton, Sr.

The lease originally entered into by the defendants landlords with the defendant Lane Photographers, Inc., was amended to permit the main tenant to use the premises as a bar and grill and also to allow the sale of soft drinks and food. The sublease entered into between plaintiff and the defendant Lane Photographers, Inc., carried over the provisions of this amendment. The offer of the proposed lease by the defendants landlords to plaintiff contained a copy of a lease, the terms and conditions of which were already accepted by the prospective new tenant, World Outlet Stores, Inc. This proposed lease strictly prohibited the use of the premises without the prior consent of the landlords " for the sale of liquors, food or for amusement purposes." As part of the offer to plaintiff, the defendants landlords stated: " Upon the failure, neglect, or refusal of * * * Victory Lunch, Inc. to execute a lease with the undersigned, containing the same terms and conditions contained in said copy

of lease enclosed herewith, the undersigned landlord shall proceed to evict said * * * Victory Lunch, Inc. from said premises in accordance with law."

Plaintiff has taken the position that the proposed lease is defective and invalid in that it would require it to change the type of business in which it is presently engaged. An examination of the legislative history of subdivisions (k), indicates that these amendments were enacted for the express purpose of affording a landlord an opportunity to obtain better terms and conditions for his property, but, nevertheless, reserved to the tenant in possession the right to remain therein and to continue the business in which it was engaged, provided that it was willing and capable to otherwise meet the terms and conditions of a bona fide offer made to the landlord by a prospective new tenant seeking possession of the same premises. The defendants do not argue that it was the intention of the Legislature to compel a tenant in possession to sign a lease which required it to engage in a completely new business, or to vacate the premises. Such a result concededly would be unquestionably oppressive and absurd as it would afford the tenant a valueless privilege. The statute merely requires the tenant in possession to accept the same " terms and conditions ". All that was intended by this phrase was that the tenant in possession enter into a lease involving the same duties and obligations between tenant and landlord, such as repairs and maintenance, and that such lease be for the same period of time, which necessarily would be a minimum of ten years, noncancelable, and at the same fixed rental, which likewise would necessarily be a minimum of $7,500 per annum, as contained in the lease offered to the landlord by a prospective new tenant. Undoubtedly this was the intention of the defendants landlords. Nevertheless, in their attempt to conform with the provisions of the statute, they went far beyond its intendment. They informed plaintiff that it would have to accept all of the conditions contained in the proposed lease with World Outlet Stores, Inc., a copy of which was forwarded to plaintiff together with their offer. Compliance with this demand of the defendants landlords would undoubtedly necessitate the termination of plaintiff's business. It is possible that plaintiff may have misinterpreted the defendants' intention in forwarding an exact copy of the proposed lease with World Outlet Stores, Inc. I hold, however, that plaintiff was justified in its interpretation and, inasmuch as the defendants' offer required it to execute a lease, on the face of which appeared

238

provisions relating to restrictions in the use to which plaintiff was now putting the premises, such lease was properly rejected.

Subdivisions (k) of the statutes provide for the acceptance of a bona fide offer. A conditional offer would not fulfill the statutory requirement. The statutes do not contemplate the removal of a tenant in possession under circumstances which would permit an offeror to withdraw his offer or to reject the final execution of the proposed agreement on the ground that one or more conditions have not been complied with by the landlord. By letter dated June 27, 1949, the prospective new tenant, World Outlet Stores, Inc., accepted defendants landlords' proposed lease. The letter stated:

" We acknowledge from you the receipt of a proposed lease for the premises known as 1544 Broadway, New York City, for a term of ten years at a minimum rental of $35,000 a year * * * the terms of which lease are in full accord with our understanding and are acceptable to us *subject to the conditions herein contained.*

" Upon your written notice to us that the statutory requirements of the State of New York have been duly complied with by you, so that the landlords and we can legally enter into said lease, we agree to then execute said lease, it being understood, however, that we shall have no obligation thereunder until there shall have been delivered to us a copy thereof duly executed by the landlords and unless we shall have been given possession thereunder on or before January 2, 1950. * * *

" We hand you herewith a deposit in the sum of $5,000 * * *.

" In the event that said lease is not executed by the landlords in accordance herewith, or in the event that said lease is executed and possession of said premises is not delivered to us on or before January 2, 1950, then the said $5,000 shall be returned to us forthwith and without demand."

It is, therefore, evident that the prospective new tenant's acceptance was conditioned upon three things, namely, (1) notice by the trustee that the statutory requirements have been complied with; (2) that the lease be duly executed by the landlords and delivered to the tenant; (3) that World Outlet Stores, Inc., be permitted to enter into possession of the premises on or before January 2, 1950. The defendants argue that all of these contingencies merely depend upon the ability of the landlords to repossess the premises so as to deliver the same to the prospective new tenant. They point out that section 10 (as amd. by

L. 1949, ch. 534, § 1, and L. 1949, ch. 535, § 1) immunize a landlord from payment of damages in the event of its failure to turn over the premises to a new tenant where the tenant in actual possession is permitted to hold over by virtue of any provision of the emergency rent laws. The court recognizes that the contingencies of the emergency rent laws were anticipated by the Legislature, as is amply illustrated by the very litigation under consideration. Nevertheless the condition that the prospective new tenant have possession of the premises on or before a day certain goes beyond the intent of the legislative edict in section 10. Conceivably, there are many possibilities other than the intervention of the emergency rent laws which might result in the inability of the landlords to comply with such condition. To cite an example, a stay of execution of the judgment of the instant action might result in a prolonged delay which would make it impossible for the landlords to meet the time limit fixed in the acceptance. Likewise, an appeal by the present tenant in possession from an adverse judgment in the summary proceeding, on grounds other than those governed by the provisions of the act contemplated by section 10 could possibly prolong litigation beyond January 2, 1950. In view of the foregoing, I hold that the lease offered by the defendants landlords was conditionally accepted by World Outlet Stores, Inc., and, therefore, does not comply with subdivision (k) of section 8, which clearly require an acceptance by the prospective tenant *unconditionally* binding it to take the lease and the terms and obligations thereof upon the removal from the premises of the tenant in possession.

As a result of the court's determination that the lease offered to plaintiff subtenant by the defendants landlords is invalid under the provisions of subdivisions (k) of sections 8, it necessarily follows that the defendants landlords' summary proceeding to dispossess the plaintiff subtenant, which was consolidated with the instant action, must fail.

Judgment is rendered for the plaintiff declaring that the defendants landlords may not evict the plaintiff subtenant pursuant to chapters 534 and 535 of the Laws of 1949. The petition in the summary proceeding is dismissed upon the merits. No costs are awarded.

Submit decree within ten days on three days' notice.

The foregoing are the facts found by me and constitute the decision of the court as required by section 440 of the Civil Practice Act.